# UNITED STATES DISTRICT COURT
# DISTRICT OF IDAHO

| | |
|---|---|
| THE TRUSTEES OF THE EIGHTH DISTRICT ELECTRICAL PENSION AND BENEFITS FUNDS, DELINQUENCY COMMITTEE OF THE EIGHTH DISTRICT ELECTRICAL PENSION AND BENEFIT FUNDS and IBEW LOCALS 291 and 449,<br><br>Plaintiffs,<br><br>vs.<br><br>BLACK RIDGE ENERGY SERVICES, INC., an Idaho corporation<br><br>Defendant. | Case No.: 4:13-cv-355<br><br>**REPORT AND RECOMMENDATION RE: DEFENDANT'S MOTION TO DISMISS**<br><br>**(Docket No. 5)** |

Currently pending before the Court is Defendant's Motion to Dismiss (Docket No. 5). Having carefully considered the record, participated in oral argument, and otherwise being fully advised, the undersigned enters the following Report and Recommendation:

## I. RELEVANT BACKGROUND[1]

1. Between 2004 and 2010, Portneuf Electric ("Portneuf") – an electrical contracting business – became bound by the terms and conditions of various collective bargaining agreements (collectively the "agreements"). *See* Compl., ¶ 9 (Docket No. 1).

---

[1] For the purpose of Defendants' Motion to Dismiss only, this "Background" section reflects the Court's acceptance as true, the allegations raised in Plaintiffs' Complaint. *See infra*.

**REPORT AND RECOMMENDATION - 1**

2. Pursuant to the agreements, Portneuf was obligated to pay fringe benefits via contributions to the various trust funds described in the agreements. *See id*. at ¶ 10.

3. On or around June 14, 2011, Portneuf executed a payment agreement with certain trust funds; in doing so, Portneuf admitted its indebtedness to the Plaintiffs in this action and agreed to make monthly payments toward that indebtedness. *See id*. at ¶ 11. Portneuf's officers and/or shareholders, Brent Harris and Terri Harris (the "Harrises"), agreed to be jointly and severally liable for the payment obligations in the payment agreement. *See id*. at ¶ 12.

4. After Portneuf and the Harrises defaulted on their obligations under the payment agreement, on March 12, 2012, Plaintiffs brought suit against them in the United States District Court for the District of Idaho, Case Number 1:12-cv-126. *See id*. at ¶ 13. The Harrises sought protection of the Bankruptcy Code, resulting in dismissal of the claims against them. *See id*. However, as to Portneuf, on April 1, 2013,[2] the District Court entered judgment against it in the amount of $1,379,640.46 for unpaid contributions, liquidated damages, interest, attorneys' fees, and costs. *See id*.

5. In the meantime, on June 22, 2012, Hilltop Electric, Inc. ("Hilltop") was incorporated by Gregory C. Calder, who also listed himself as Hilltop's registered agent. *See id*. at ¶ 14. Mr. Calder was the original incorporator of Portneuf in 2003 and also served as Portneuf's registered agent. *See id*.

6. On July 9, 2012, Hilltop formally changed its name to Black Ridge Energy Services, Inc. ("Black Ridge"), the Defendant in this action. *See id*. The filing associated with

---

[2] Plaintiff's Complaint alleges that, on July 8, 2013, the District Court entered judgment. *See* Compl., ¶ 13 (Docket No. 1). However, an examination of the record reveals that the judgment was actually entered on April 1, 2013. *See* Case No. 1:12-cv-126 (Docket No. 64).

**REPORT AND RECOMMENDATION - 2**

the name change from Hilltop to Black Ridge was completed by Matt Spencer, an employee of Portneuf, who identified himself as Black Ridge's President. *See id*.

7. On September 6, 2012, Black Ridge notified the Idaho Secretary of State that its officers had changed and (at least as of that time) included Jason Thomsen, Dustin Morrison, and Case Chatterton – these three individuals were employees of Portneuf. *See id*. at ¶ 15. Within the notice, any questions about the name change were directed to Terri Harris, who was a Portneuf shareholder, officer, and employee. *See id*. Also on September 6, 2012, Mr. Thomsen replaced Mr. Calder as Black Ridge's registered agent. *See id*.

8. Shortly after its formation, Black Ridge began performing electrical contracting work at the construction site of a future yogurt plant in southern Idaho. *See id*. at ¶ 16. Officers and employees of Black Ridge performed such work for Black Ridge while still employed by Portneuf. *See id*. For example, Black Ridge's officers and employees arrived at the yogurt plant site driving vehicles owned or leased by Portneuf and registered to Portneuf; Black Ridge utilized work trailers owned and leased by Portneuf and registered to Portneuf; Black Ridge's business address was the same as Portneuf's; Black Ridge's phone number rang at the offices of Portneuf; Terri Harris, one of Portneuf's owners, performed services for Black Ridge, including clerical work; Brett Harris, one of Portneuf's owners, worked as an electrician for Black Ridge; Black Ridge utilized Portneuf's license or registration as an electrical contractor with the City of Pocatello to obtain permits for work performed by Black Ridge; and Black Ridge utilized the same material suppliers as Portneuf. *See id*. at ¶ 16 & 17.

9. In June or July 2013, Brett Harris solicited Portneuf's former employees to return to work for him "as Black Ridge." *See id*. at ¶ 18.

**REPORT AND RECOMMENDATION - 3**

10. On August 13, 2013, Plaintiffs brought the instant action, alleging in support of their sole "Claim for Relief" that:

- "Black Ridge is the successor in interest and alter ego of Portneuf [ ]. As such, Black Ridge is responsible for the debts and obligations of Portneuf arising under ERISA."

- "Portneuf failed to pay contributions and assessments to the Plaintiffs in violation of the Labor Agreements, Trust Agreements, ERISA § 515, 29 U.S.C. § 1145, and the Payment Agreement, which obligations have been reduced to judgment."

- "Pursuant to ERISA § 502(g)(2), 29 U.S.C. § 1132(g)(2), Plaintiffs are entitled to judgment against Black Ridge as follows:

    - [Black Ridge] be ordered to pay Plaintiffs all such contribution and assessment amounts, interest, costs, and fees pursuant to the judgment against Portneuf;

    - For reasonable attorneys' fees and costs as determined by the Court in accordance with ERISA § 502(g)(2), 29 U.S.C. § 1132(g)(2).

    - For such other and further relief as the Court may deem just and equitable."

*Id*. at ¶¶ 20-22.

11. On December 23, 2013, Black Ridge filed the at-issue Motion to Dismiss, arguing that this Court does not have subject matter jurisdiction over this action. *See* Mot. to Dismiss, pp. 1-2 (Docket No. 5, Att. 1).

## II. REPORT

FRCP 12(b)(1) authorizes a motion to dismiss for lack of subject matter jurisdiction. "It is a fundamental precept that federal courts are courts of limited jurisdiction . . . [and] limits upon federal jurisdiction . . . must be neither disregarded nor evaded." *Owen Equipment & Erection Co. v. Kroger*, 437 U.S. 365, 374 (1978). The plaintiff has the burden of establishing

**REPORT AND RECOMMENDATION - 4**

that subject matter jurisdiction is proper. *See Kokkonen v. Guardian Life Ins. Co.*, 511 U.S. 375, 377 (1994). "When considering a motion to dismiss for lack of subject matter jurisdiction, the court presumes the factual allegations of the complaint are true and draws reasonable inferences in favor of the non-moving party." *Whisnaut v. U.S.*, 400 F.3d 1177, 1179 (9th Cir. 2005). This tenet that allegations must be taken as true, however, does not extend to legal conclusions contained in the complaint. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009).

Here, Black Ridge contends that this action represents "a subsequent lawsuit seeking to impose liability against a third party [(itself)] for an original judgment" and, as a result, "there is no federal claim." Mem. in Supp. of Mot. to Dismiss, p. 2 (Docket No. 5, Att. 1). In turn, Black Ridge asks this Court to dismiss Plaintiffs' Complaint, based on the holding and analysis in *Peacock v. Thomas*, 516 U.S. 349 (1995).

In *Peacock*, Thomas sued his former employer, Tru-Tech, and its officer Peacock, alleging that both had breached fiduciary duties in administering the employer's pension benefits plan. The suit brought in federal court alleged a claim under a federal statute, ERISA. The federal district court found that Tru-Tech breached its fiduciary duties, but held that Peacock was not a fiduciary and entered judgment only against True-Tech. Later, Thomas filed a second federal court lawsuit – this time against Peacock only, alleging that Peacock had conspired to siphon off Tru-Tech's assets in order to prevent Thomas from satisfying the judgment against Tru-Tech and, as part of the conspiracy also had fraudulently conveyed Tru-Tech's assets. Thomas sought to pierce the corporate veil, relying upon ERISA and other federal laws.

Thomas successfully obtained a judgment in the same amount against Peacock as had been entered previously against Tru-Tech. The Fourth Circuit affirmed, but the Supreme Court

**REPORT AND RECOMMENDATION - 5**

reversed,[3] holding that the district court lacked jurisdiction over Thomas's second lawsuit. The issue presented to the Supreme Court was whether a federal court possesses ancillary jurisdiction over a new action in which a federal judgment creditor seeks to impose liability for a money judgment on a person not otherwise liable for the judgment. The claim asserted against Peacock was not an ERISA claim, and Peacock had not been found liable in the first lawsuit. With this backdrop, the Supreme Court found:

> Ancillary jurisdiction may extend to claims having a factual and logical dependence on the primary lawsuit, but that primary lawsuit must contain an independent basis for federal jurisdiction. The court must have jurisdiction over a case or controversy before it may assert jurisdiction over ancillary claims. In a subsequent lawsuit involving claims with no independent basis for jurisdiction, a federal court lacks the threshold jurisdictional power that exists when ancillary claims are asserted in the same proceeding as the claims conferring federal jurisdiction. Consequently, claims alleged to be factually interdependent with and, hence, ancillary to claims brought in an earlier federal lawsuit will not support federal jurisdiction over a subsequent lawsuit. The basis of the doctrine of ancillary jurisdiction is the practical need to protect legal rights or effectively to resolve an entire, logically entwined lawsuit. But once judgment was entered in the original ERISA suit, the ability to resolve simultaneously factually intertwined issues vanished.

*Id*. at 355 (internal citations and quotation marks omitted). The Supreme Court then concluded in no uncertain terms that:

> We have never authorized the exercise of ancillary jurisdiction in a subsequent lawsuit to impose an obligation to pay an existing federal judgment on a person not already liable for that judgment.

*Id*. at 357.

Even so, the Supreme Court recognized that a federal court can utilize ancillary jurisdiction in subsequent proceedings "for the exercise of a federal court's inherent power to

---

[3] The Supreme Court "granted certiorari to determine whether the [d]istrict [c]ourt has subject-matter jurisdiction and to resolve a conflict among the Court of Appeals," including the Ninth Circuit. *See Peacock*, 516 U.S. at 352 (citing Ninth Circuit's decision in *Blackburn Truck Lines, Inc. v. Francis* as conflicting case on subject).

**REPORT AND RECOMMENDATION - 6**

enforce its judgments," citing with approval decisions recognizing the use of ancillary jurisdiction over a broad range of supplementary proceedings involving third parties to assist in the protection and enforcement of federal judgments – including attachment, mandamus, garnishment, and the prejudgment avoidance of fraudulent conveyances." *Id*. at 356-57; *see also Thomas, Head & Greisen Employees Trust v. Buster*, 95 F.3d 1449, 1454 (9th Cir. 1996) (distinguishing *Peacock* where judgment creditors were *not* attempting to establish new defendant's liability (like *Peacock*), but were attempting to disgorge property fraudulently transferred so that they could collect judgment); *Klein v. American Finance Ltd. Partnership*, 2010 WL 2667342, *4 (D. Idaho 2010) (same).[4]

In their briefing, Plaintiffs oppose Black Ridge's Motion to Dismiss by arguing that (1) they are asserting a claim for relief against Black Ridge premised upon ERISA, and (2) that Black Ridge's dismissal efforts go to the merits of the dispute between the parties, not this Court's underlying subject-matter jurisdiction. *See* Resp. to Mot. to Dismiss, pp. 2-8 (Docket No. 12). Except, as Black Ridge points out, that is not the picture that Plaintiffs' Complaint actually paints. *See* Reply in Supp. of Mot. to Dismiss, pp. 2-5 (Docket No. 13). Plaintiffs' Complaint unequivocally discusses Portneuf's liability under ERISA (memorialized in a judgment against Portneuf in an earlier, altogether separate, proceeding) and how Black Ridge is now responsible (via this action) for that same judgment under vicarious or derivative liability

---

[4] Still, the Supreme Court declined to address whether Thomas's second lawsuit was intended to preserve and force payment of the judgment by voiding fraudulent transfers of Tru-Tech's assets because, even if Thomas could have sought to force payment by mandamus or to void fraudulent transfers, his second lawsuit was not characterized in such a way. *See Peacock*, 516 U.S. at 356-57.

**REPORT AND RECOMMENDATION - 7**

theories, including successor in interest and/or alter ego (but not ERISA, specifically). For example, Plaintiffs' Complaint alleges:

- "... *Portneuf* [ ] ... executed a series of Letters of Assent by which *Portneuf* agreed to become signatory to and bound by the terms and conditions of the various collective bargaining agreement .... *Portneuf* agreed to be bound by all successor Agreements ...."

- "... *Portneuf* was obligated to pay fringe benefits ...."

- "... *Portneuf* executed a Payment Agreement .... *Portneuf* admitted its indebtedness ... and Portneuf agreed to make monthly payments toward that indebtedness."

- "Defendants Brent Harris and Terri Harris, by said Payment Agreement, agreed to be jointly and severally liable for the payment obligations in the Agreement."[5]

- "After *Portneuf* and the Harrises defaulted on their obligations ... Plaintiffs herein brought suit against them ...."

- "*Portneuf* failed to make trust contributions required to provide health, welfare, and retirement benefits to its employees, for which failure judgment has been entered."

- "Black Ridge is the successor in interest and alter ego of *Portneuf* [ ]. As such, Black Ridge is responsible for the debts and obligations of *Portneuf* arising under ERISA."

- "*Portneuf* failed to pay contributions and assessments . . ., which obligations have been reduced to judgment."

- "... Plaintiffs are entitled to judgment against Black Ridge [and that] [Black Ridge] be ordered to pay Plaintiffs all such contribution and

---

[5] The Harrises are not actually Defendants in this action. They were, however, two of the three named defendants in the earlier suit that generated the judgment which Plaintiffs now seek to have Black Ridge account for. *See* Case No. 1:12-cv-126 Compl. (Docket No. 1). It appears as though certain paragraphs in the underlying complaint were "copied and pasted" into the operative Complaint here. *Compare* Case No. 1:12-cv-126 Compl., ¶ 19 (Docket No. 1), *with* Compl., ¶ 12 (Docket No. 1).

**REPORT AND RECOMMENDATION - 8**

assessment amounts, interest, costs, and fees pursuant to the judgment against *Portneuf*."

Compl. ¶¶ 1, 9-13, 20, 21, 22(b) (Docket No. 1) (emphasis added). In other words, while Plaintiffs' Complaint discusses Portneuf's alleged conduct contrasted against ERISA's statutory mandate, it does so to the exclusion of Black Ridge's own liability under ERISA (or some other federal authority). All that is mentioned in this latter respect is how Black Ridge came to be, followed by a legal conclusion that, as Portneuf's alter ego, Black Ridge is now responsible (through this separate action) for the earlier judgment entered against Portneuf only. Such tactical maneuvering arguably runs counter to *Peacock*.[6]

To his credit, Plaintiffs' counsel appeared to acknowledge this problematic issue during oral argument, suggesting that the Complaint's "sloppy language" may have contributed to confusion over the nature of Plaintiffs' claim against Black Ridge. According to Plaintiffs' counsel, Plaintiffs' alter ego theory of recovery from Black Ridge is not premised upon state law, but, rather, is distinctly anchored in ERISA and federal labor law.[7] But, again, as written,

---

[6] Any characterization of *Peacock* as relevant only to piercing the corporate veil cases and not to alter ego cases is misplaced, as *Peacock*, though specifically addressing a veil-piercing claim, was broad enough to address the conflicting practices of several circuits (including the Ninth Circuit) that had involved alter ego claims. *See Peacock*, 516 U.S. at 352, n.2 (citing *Sandlin v. Corporate Interiors Inc.*, 972 F.2d 1212 (10th Cir. 1992); *Blackburn Truck Lines, Inc. v. Francis*, 723 F.2d 730 (9th Cir. 1984)); *see also Ellis v. All Steel Constr., Inc.*, 389 F.3d 1031, 1034-37 (10th Cir. 2004).

[7] In this respect, Plaintiffs cite to *Local 159 v. Nor-Cal Plumbing, Inc.*, 185 F.3d 978 (9th Cir. 1999), to argue that "[t]his cause of action, to hold Black Ridge liable as an employer under ERISA, is an ERISA based cause of action. It is not a claim to pierce the corporate veil." Resp. to Mot. to Dismiss, p. 4 (Docket No. 12). But *Local 159* dealt with alter ego and piercing the corporate veil claims together in one action. *See Local 159*, 185 F.3d at 980. Here, the alleged alter ego party, Black Ridge, was not part of the original action; had it been, with alter ego theories alleged at that time, it may very well have been subject to any resulting judgment. *Local 159* does not squelch *Peacock's* input on the issue.

**REPORT AND RECOMMENDATION - 9**

Plaintiffs' Complaint neglects to bridge the gap between Black Ridge's conduct and an ERISA violation, if any. It is true that the Complaint generically discusses ERISA so as to set the stage for this action, but its application is more clearly aligned with Portneuf, not Black Ridge.

Hence, what, then, is *Black Ridge's* ERISA violation that provides the jurisdictional basis for this Court to be involved? When asked this question at the hearing, Plaintiffs' counsel stated matter-of-factly that Black Ridge failed to pay contributions. But not only is this definitely *not* alleged in the Complaint with any level of detail, but it ignores the information in the record that Black Ridge was formed (1) *after* the relevant agreements establishing the contribution obligations were entered into, and (2) *after* Plaintiffs originally brought their claims against Portneuf in Case Number 1:12-cv-126, alleging the foundational ERISA violations. These realities combine to represent the challenging needle that Plaintiffs must thread to overcome Black Ridge's Motion to Dismiss and proceed forward, particularly when keeping in mind the Supreme Court's direction in *Peacock*. Without stating here that Plaintiffs have no claim whatsoever against Black Ridge, their as-plead Complaint resembles a judgment-enforcement action based on a retroactive alter ego claim – clearly falling within the scope of *Peacock* – and, as such, requires its own basis for federal jurisdiction separate from the extant judgment against Portneuf.

Plaintiffs' current allegations against Black Ridge are unclear at best, or simply inadequate; perhaps this can be remedied by virtue of an amended pleading showing Black Ridge's "direct entanglement in the pension fund liability reflected in the underlying federal judgment." *Ellis*, 389 F.3d at 1036. Until then, Plaintiffs' Complaint's allegations are just not

made of jurisdictional timber, vis à vis Black Ridge's liability. It is therefore recommended that Black Ridge's Motion to Dismiss be granted and that Plaintiffs' Complaint be dismissed, without prejudice.

### III. RECOMMENDATION

For the foregoing reasons, IT IS HEREBY RECOMMENDED that Black Ridge's Motion to Dismiss (Docket No. 5) be GRANTED and that Plaintiffs' Complaint be dismissed, without prejudice.[8] As to Black Ridge's corresponding request to recover attorneys' fees, if Black Ridge intends to further pursue such a request, it should be done in the appropriate manner as prescribed by the Federal Rules of Civil Procedure, and only after the right to seek such fees has ripened.

Pursuant to District of Idaho Local Civil Rule 72.1(b)(2), a party objecting to a Magistrate Judge's recommended disposition "must serve and file specific, written objections, not to exceed twenty pages . . . within fourteen (14) days. . ., unless the magistrate or district judge sets a different time period." Additionally, the other party "may serve and file a response, not to exceed ten pages, to another party's objections within fourteen (14) days after being served with a copy thereof."

DATED: **July 3, 2014**

Honorable Ronald E. Bush
U. S. Magistrate Judge

---

[8] The Court notes that, on June 19, 2014, Plaintiff filed a Motion for Leave to File Amended Complaint (Docket No. 17).

**REPORT AND RECOMMENDATION - 11**