# UNITED STATES DISTRICT COURT
# DISTRICT OF IDAHO

| | |
|---|---|
| THE TRUSTEES OF THE EIGHTH DISTRICT ELECTRICAL PENSION AND BENEFITS FUNDS, DELINQUENCY COMMITTEE OF THE EIGHTH DISTRICT ELECTRICAL PENSION AND BENEFIT FUNDS and IBEW LOCALS 291 and 449,<br><br>Plaintiffs,<br><br>vs.<br><br>BLACK RIDGE ENERGY SERVICES, INC., an Idaho corporation<br><br>Defendant. | Case No.: 4:13-cv-355<br><br>**REPORT AND RECOMMENDATION RE: DEFENDANT'S MOTION TO DISMISS**<br><br>**(Docket No. 27)** |

Currently pending before the Court is Defendant's Motion to Dismiss (Docket No. 27). Having carefully considered the record and otherwise being fully advised, the undersigned enters the following Report and Recommendation:

## I. RELEVANT BACKGROUND[1]

**A.  Factual Background**

1.  Between 2004 and 2010, Portneuf Electric ("Portneuf") – an electrical contracting business – became bound by the terms and conditions of various collective bargaining agreements (collectively the "agreements"). *See* First Am. Compl., ¶ 9 (Docket No. 26).

---

[1] For the purpose of Defendants' Motion to Dismiss only, this "Background" section reflects the Court's acceptance as true, the allegations raised in Plaintiffs' First Amended Complaint.  *See infra*.

**REPORT AND RECOMMENDATION - 1**

2.	Pursuant to the agreements, Portneuf was obligated to pay fringe benefits via contributions to the various trust funds described in the agreements. *See id*. at ¶ 10.

3.	On or around June 14, 2011, Portneuf executed a payment agreement with certain trust funds; in doing so, Portneuf admitted its indebtedness to the Plaintiffs in this action and agreed to make monthly payments toward that indebtedness. *See id*. at ¶ 11. Portneuf's officers and/or shareholders, Brent Harris and Terri Harris (the "Harrises"), agreed to be jointly and severally liable for the payment obligations in the payment agreement. *See id*. at ¶ 12.

4.	After Portneuf and the Harrises defaulted on their obligations under the payment agreement, on March 12, 2012, Plaintiffs brought suit against them in the United States District Court for the District of Idaho, Case Number 1:12-cv-126 (the "Underlying Action"). *See id*. at ¶ 13. The Harrises sought protection of the Bankruptcy Code, resulting in a dismissal of the claims against them. *See id*. However, as to Portneuf, on April 1, 2013,[2] the District Court entered judgment against it in the amount of $1,379,640.46 for unpaid contributions, liquidated damages, interest, attorneys' fees, and costs. *See id*.

5.	In the meantime, on June 22, 2012, Hilltop Electric, Inc. ("Hilltop") was incorporated by Gregory C. Calder, who also listed himself as Hilltop's registered agent. *See id*. at ¶ 14. As it turned out, Mr. Calder also was the original incorporator of Portneuf in 2003 and served as Portneuf's registered agent. *See id*. Hilltop was not named as a party in the Underlying Action.

---

[2] Plaintiff's First Amended Complaint alleges that, on July 8, 2013, the District Court entered judgment. *See* First Am. Compl., ¶ 13 (Docket No. 26). However, an examination of the record reveals that the judgment was actually entered on April 1, 2013. *See* Case No. 1:12-cv-126 (Docket No. 64).

**REPORT AND RECOMMENDATION - 2**

6.      On July 9, 2012, Hilltop formally changed its name to Black Ridge Energy Services, Inc. ("Black Ridge"), the Defendant in this action. *See id*. The filing associated with the name change from Hilltop to Black Ridge was completed by Matt Spencer, an employee of Portneuf, who identified himself as Black Ridge's President. *See id*. Black Ridge was not named as a party in the Underlying Action.

7.      On September 6, 2012, Black Ridge notified the Idaho Secretary of State that its officers had changed and (at least as of that time) included Jason Thomsen, Dustin Morrison, and Case Chatterton – these three individuals were employees of Portneuf. *See id*. at ¶ 15. Within the notice, any questions about the name change were directed to Terri Harris, who was a Portneuf shareholder, officer, and employee. *See id*. Also on September 6, 2012, Mr. Thomsen replaced Mr. Calder as Black Ridge's registered agent. *See id*.

8.      Shortly after its formation, Black Ridge began performing electrical contracting work at the construction site of a future yogurt plant in southern Idaho. *See id*. at ¶ 16. Officers and employees of Black Ridge performed such work for Black Ridge while still nominally employed by Portneuf. *See id*. For example, (1) Black Ridge's officers and employees arrived at the yogurt plant site driving vehicles owned or leased by Portneuf and registered to Portneuf; (2) Black Ridge utilized work trailers owned and leased by Portneuf and registered to Portneuf, although some of those vehicles had their Vehicle Identification Numbers defaced (which Plaintiffs claim was an attempt to disguise their ownership and defraud Portneuf's creditors); (3) Black Ridge's business address was the same as Portneuf's; (4) Black Ridge's phone number rang at the offices of Portneuf; (5) Terri Harris, one of Portneuf's owners, performed services for Black Ridge, including clerical work; (6) Brett Harris, one of Portneuf's owners, worked as an

electrician for Black Ridge and recruited other electricians, including employees or former employees of Portneuf, to work for Black Ridge; (7) Black Ridge utilized Portneuf's license or registration as an electrical contractor with the City of Pocatello to obtain permits for work performed by Black Ridge; and (8) Black Ridge utilized the same material suppliers as Portneuf. *See id*. at ¶ 16 & 17.

   9. In June or July 2013, Brett Harris solicited Portneuf's former employees to return to work for him "as Black Ridge." *See id*. at ¶ 18. According to Plaintiffs, other workers hired by Black Ridge had no previous connection to Portneuf or Black Ridge; were not owners or officers of Black Ridge; performed electrical work covered by the contracts between Portneuf, the Local Unions, and the Trusts; and were not hired via the hiring halls operated by Locals 291 and 449. *See id*.

   10. Black Ridge has never made contribution payments for fringe benefits to any of the Plaintiffs, for any of its employees. *See id*.

**B.** **Procedural Background**

   11. On August 13, 2013, Plaintiffs brought the instant action, alleging in support of their original Complaint's sole "Claim for Relief" that:

- "Black Ridge is the successor in interest and alter ego of Portneuf [ ]. As such, Black Ridge is responsible for the debts and obligations of Portneuf arising under ERISA."

- "Portneuf failed to pay contributions and assessments to the Plaintiffs in violation of the Labor Agreements, Trust Agreements, ERISA § 515, 29 U.S.C. § 1145, and the Payment Agreement, which obligations have been reduced to judgment."

- "Pursuant to ERISA § 502(g)(2), 29 U.S.C. § 1132(g)(2), Plaintiffs are entitled to judgment against Black Ridge as follows:

**REPORT AND RECOMMENDATION - 4**

> • [Black Ridge] be ordered to pay Plaintiffs all such contribution and assessment amounts, interest, costs, and fees pursuant to the judgment against Portneuf;
>
> • For reasonable attorneys' fees and costs as determined by the Court in accordance with ERISA § 502(g)(2), 29 U.S.C. § 1132(g)(2).
>
> • For such other and further relief as the Court may deem just and equitable."

*See* Compl. at ¶¶ 20-22 (Docket No. 1).

12. On December 23, 2013, Black Ridge filed a Motion to Dismiss, arguing that this Court does not have subject matter jurisdiction over this action. *See* Mem. in Supp. of Mot. to Dismiss, pp. 1-2 (Docket No. 5, Att. 1) ("This Court does not have subject matter jurisdiction. This is a subsequent lawsuit seeking to impose liability against a third party for an original judgment. As a result, there is no federal claim.").

13. On July 3, 2014, the undersigned concluded that this Court did not have subject matter jurisdiction under *Peacock v. Thomas*, 516 U.S. 349 (1995), and recommended that Black Ridge's Motion to Dismiss be granted, reasoning in relevant part:

> Plaintiffs' Complaint unequivocally discusses Portneuf's liability under ERISA (memorialized in a judgement against Portneuf in an earlier, altogether separate, proceeding) and how Black Ridge is now responsible (via this action) for that same judgment under vicarious or derivative liability theories, including successor in interest and/or alter ego (but not ERISA specifically). . . . . In other words, while Plaintiffs' Complaint discusses Portneuf's alleged conduct contrasted against ERISA's statutory mandate, it does so to the exclusion of Black Ridge's own liability under ERISA (or some other federal authority). All that is mentioned in this latter respect is how Black Ridge came to be, followed by a legal conclusion that, as Portneuf's alter ego, Black Ridge is now responsible (through this separate action) for the earlier judgment entered against Portneuf only. Such tactical maneuvering arguably runs counter to *Peacock*.
>
> To his credit, Plaintiffs' counsel appeared to acknowledge this problematic issue during oral argument, suggesting that the Complaint's "sloppy language" may have contributed to confusion over the nature of Plaintiffs' claim against Black Ridge. According to Plaintiffs' counsel, Plaintiffs' alter ego theory of recovery from Black

**REPORT AND RECOMMENDATION - 5**

> Ridge is not premised upon state law, but, rather, is distinctly anchored in ERISA and federal labor law. But, again, as written, Plaintiffs' Complaint neglects to bridge the gap between Black Ridge's conduct and an ERISA violation, if any. It is true that the Complaint generically discusses ERISA so as to set the stage for this action, but its application is more clearly aligned with Portneuf, not Black Ridge.
>
> Hence, what, then is *Black Ridge's* ERISA violation that provides the jurisdictional basis for this Court to be involved? When asked this question at the hearing, Plaintiffs' counsel stated matter-of-factly that Black Ridge failed to pay contributions. But not only is this definitely *not* alleged in the Complaint with any level of detail, it ignores the information in the record that Black Ridge was formed (1) *after* the relevant agreements establishing the contribution obligations were entered into, and (2) *after* Plaintiffs originally brought their claims against Portneuf in Case Number 1:12-cv-126, alleging the foundational ERISA violations. These realities combine to represent the challenging needle that Plaintiffs must thread to overcome Black Ridge's Motion to Dismiss and proceed forward, particularly when keeping in mind the Supreme Court's direction in *Peacock*. Without stating here that Plaintiffs have no claim whatsoever against Black Ridge, their as-plead Complaint resembles a judgment-enforcement action based on a retroactive alter ego claim – clearly falling within the scope of *Peacock* – and, as such, requires its own basis for federal jurisdiction separate from the extant judgment against Portneuf.
>
> Plaintiffs' current allegations against Black Ridge are unclear at best, or simply inadequate; perhaps this can be remedied by virtue of an amended pleading showing Black Ridge's direct entanglement in the pension fund liability reflected in the underlying federal judgment. Until then, Plaintiffs' Complaint's allegations are just not made of jurisdictional timber, vis à vis Black Ridge's liability. It is therefore recommended that Black Ridge's Motion to Dismiss be granted and that Plaintiffs' Complaint be dismissed, without prejudice.

*See* 7/3/14 Rpt. and Recomm., pp. 7-11 (Docket No. 18) (emphasis in original; footnotes, internal quotation marks, and citations omitted).

14. On August 7, 2014, United States District Judge Edward J. Lodge adopted the undersigned's Report and Recommendation, granting Black Ridge's Motion to Dismiss while also granting Plaintiffs' then-pending Second Motion for Leave to File Amended Complaint. *See* 8/7/14 Order (Docket No. 25).

**REPORT AND RECOMMENDATION - 6**

15. Also on August 7, 2014, Plaintiffs' filed their First Amended Complaint. *See* First Am. Compl. (Docket No. 26). This time, Plaintiffs asserted two claims for relief: (1) Black Ridge's Failure to Pay Contributions (First Claim for Relief), and (2) Black Ridge's liability for the Judgment Against Portneuf (Second Claim for Relief). *See id.* at pp. 7-8. As to Plaintiffs' First Claim for Relief, Plaintiffs allege in relevant part:

- "Defendant Black Ridge is the alter ego of Portneuf Electric, and thus is, within the meaning of the LMRDA and ERISA signatory to collective bargaining agreements with Locals 291 and 449 as well as trust agreements with various benefit trusts . . . ."

- "Black Ridge employed electricians but failed to make fringe benefit contributions to the Plaintiff benefit and pension funds in violation fo the Labor Agreements, Trust Agreements, and ERISA § 515, 29 U.S.C. § 1145 for any of the electricians employed by its since June 22, 2012.

- "Plaintiffs are entitled to the delinquent contributions, liquidated damages and pre-judgment interest in amounts to be proved."

*See id.* at ¶¶ 20-22. As to Plaintiffs' Second Claim for Relief, Plaintiffs allege in relevant part:

- "Both Black Ridge and Portneuf have failed to pay the contributions, liquidated damages, and interest found owing to the Plaintiffs pursuant to the judgment of July 8, 2013."

- "As Portneuf's alter ego, Black Ridge is liable for that judgment, including post-judgment interest in an amount to be determined."

*See id.* at ¶¶ 24-25.

16. On August 22, 2014, Black Ridge filed a renewed Motion to Dismiss, which is the subject of this Report and Recommendation, arguing that, notwithstanding Plaintiffs' latest amendment efforts, this Court still lacks subject matter jurisdiction. *See* Mem. in Supp. of Mot. to Dismiss, pp. 4-9 (Docket No. 27) ("This Court does not have subject matter jurisdiction. This is a subsequent lawsuit seeking to impose liability against a third party for an original judgment.

**REPORT AND RECOMMENDATION - 7**

As a result, there is no federal claim. The U.S. Supreme Court has held, 'ancillary jurisdiction is not justified over a new lawsuit to impose liability for a judgment on a third party.'") (quoting *Peacock*, 516 U.S. at 359). Black Ridge alternatively argues that Plaintiffs' First Amended Complaint should be dismissed because it fails to state a claim upon which relief can be granted. *See id*. at pp. 9-10.

## II. REPORT

FRCP 12(b)(1) authorizes a motion to dismiss for lack of subject matter jurisdiction. "It is a fundamental precept that federal courts are courts of limited jurisdiction . . . [and] limits upon federal jurisdiction . . . must be neither disregarded nor evaded." *Owen Equip. & Erection Co. v. Kroger*, 437 U.S. 365, 374 (1978). The plaintiff has the burden of establishing that subject matter jurisdiction is proper. *See Kokkonen v. Guardian Life Ins. Co.*, 511 U.S. 375, 377 (1994). "When considering a motion to dismiss for lack of subject matter jurisdiction, the court presumes the factual allegations of the complaint are true and draws reasonable inferences in favor of the non-moving party." *Whisnaut v. U.S.*, 400 F.3d 1177, 1179 (9th Cir. 2005). This tenet that allegations must be taken as true, however, does not extend to legal conclusions contained in the complaint. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009).

Black Ridge again argues that, under *Peacock*, the allegations contained within Plaintiffs' First Amended Complaint are not direct claims under ERISA or the LMRA and, therefore, should be dismissed for lack of subject matter jurisdiction. *See* Mem. in Supp. of Mot. to Dismiss, pp. 4-9 (Docket No. 27). To the extent Plaintiffs' First Amended Complaint represents an attempted end-run around *Peacock* to somehow impose liability upon Black Ridge for the judgment entered in the Underlying Action, the undersigned agrees.

**REPORT AND RECOMMENDATION - 8**

As described in the earlier Report and Recommendation, the *Peacock* case involved allegations by the plaintiff, Thomas, against his former employer, Tru-Tech, and its officer Peacock, that both had breached fiduciary duties in administering the employer's pension benefits plan. The federal court lawsuit alleged an ERISA claim. The court ruled that Tru-Tech had breached fiduciary duties, but held that Peacock was not a fiduciary and entered judgment only against Tru-Tech itself. Later, Thomas filed a separate federal court lawsuit against Peacock only, alleging that Peacock had conspired to siphon off Tru-Tech's assets to keep Thomas from satisfying the judgment against Tru-Tech and also had fraudulently conveyed Tru-Tech's assets. Thoms sought to pierce the corporate veil, relying upon ERISA and other federal laws.

In the separate lawsuit, Thomas obtained a judgment against Peacock in the same amount as had been entered previously against Tru-Tech. In ruling on a jurisdictional challenge, the Fourth Circuit affirmed, but the Supreme Court reversed,[3] holding that there was no federal jurisdiction over Thomas's second lawsuit. The issue was whether ancillary jurisdiction exists over a new action in which a federal judgment creditor seeks to impose liability for a money judgment on a person not otherwise liable for the judgment. The claim asserted against Peacock was not an ERISA claim, and Peacock had not been found liable in the first lawsuit. With this backdrop, the Supreme Court found:

> Ancillary jurisdiction may extend to claims having a factual and logical dependence on the primary lawsuit, but that primary lawsuit must contain an independent basis for federal jurisdiction. The court must have jurisdiction over a case or controversy

---

[3] The Supreme Court "granted certiorari to determine whether the [d]istrict [c]ourt has subject-matter jurisdiction and to resolve a conflict among the Court of Appeals," including the Ninth Circuit. *See Peacock*, 516 U.S. at 352 (citing Ninth Circuit's decision in *Blackburn Truck Lines, Inc. v. Francis* as conflicting case on subject).

**REPORT AND RECOMMENDATION - 9**

> before it may assert jurisdiction over ancillary claims. In a subsequent lawsuit involving claims with no independent basis for jurisdiction, a federal court lacks the threshold jurisdictional power that exists when ancillary claims are asserted in the same proceeding as the claims conferring federal jurisdiction. Consequently, claims alleged to be factually interdependent with and, hence, ancillary to claims brought in an earlier federal lawsuit will not support federal jurisdiction over a subsequent lawsuit. The basis of the doctrine of ancillary jurisdiction is the practical need to protect legal rights or effectively to resolve an entire, logically entwined lawsuit. But once judgment was entered in the original ERISA suit, the ability to resolve simultaneously factually intertwined issues vanished.

*Peacock*, 516 U.S. at 355 (internal citations and quotation marks omitted). Rather emphatically, the Supreme Court then said:

> We have never authorized the exercise of ancillary jurisdiction in a subsequent lawsuit to impose an obligation to pay an existing federal judgment on a person not already liable for that judgment.

*Id*. at 357.

Even so, the Supreme Court recognized that a federal court *can* properly invoke ancillary jurisdiction in subsequent proceedings to exercise "a federal court's inherent power to enforce its judgments." Examples include a broad range of supplementary proceedings involving third parties to assist in the protection and enforcement of federal judgments – including attachment, mandamus, garnishment, and the prejudgment avoidance of fraudulent conveyances. *Id*. at 356-57; *see also Thomas, Head & Greisen Employees Trust v. Buster*, 95 F.3d 1449, 1454 (9th Cir. 1996) (distinguishing *Peacock* where judgment creditors were *not* attempting to establish new defendant's liability (like *Peacock*), but were attempting to disgorge property fraudulently transferred so that they could collect judgment); *Klein v. American Finance Ltd. P'ship*, 2010 WL 2667342, *4 (D. Idaho 2010) (same).[4]

---

[4] Still, the Supreme Court declined to address whether Thomas's second lawsuit was intended to preserve and force payment of the judgment by voiding fraudulent transfers of Tru-Tech's assets because, even if Thomas could have sought to force payment by mandamus or to void fraudulent transfers, his second lawsuit was not characterized in such a way. *See Peacock*, 516 U.S. at 356-57.

**REPORT AND RECOMMENDATION - 10**

Even though the Amended Complaint is artfully pled, at its essence Plaintiffs' Second Claim for Relief still seeks to accomplish what *Peacock* clearly precludes – it tries to impose liability for an extant ERISA judgment against one party, Portneuf, onto a third party, Black Ridge. Indeed, Plaintiffs characterize their Second Claim for Relief as just that: "Defendant Black Ridge's Liability for the Judgment Against Portneuf." *See* First Am. Compl., pp. 7-8 (Docket No. 26); *see also id* at ¶ 25 ("As Portneuf's alter ego, Black Ridge is liable for that judgment, including post-judgment interest in an amount to be determined."). However, as described in the earlier Report and Recommendation, Black Ridge/Hilltop did not exist when the relevant agreements establishing the disputed contribution obligations were entered into. To be sure, Black Ridge/Hilltop did not exist when Plaintiffs first brought the Underlying Action.

In that milieu, the factual allegations raised by Plaintiffs in this lawsuit are inescapably independent from those asserted in the Underlying Action's ERISA suit, which involved *Portneuf's* status as plan fiduciary and *its* alleged wrongdoing in the administration of the agreements. In turn, "once judgment was entered in [the Underlying Action's] ERISA suit, the ability to resolve simultaneously factually intertwined issues [(like Portneuf's alleged alter ego, Black Ridge)] vanished. . . . '[N]either the convenience of litigants nor considerations of judicial economy' can justify the extension of ancillary jurisdiction over . . . claims in this subsequent proceeding." *Peacock* 516 U.S. at 355 (quoting *Owen Equip. & Erection Co. v. Kroger*, 437 U.S. 365, 377 (1978)). Therefore, as currently positioned – that is, a judgment having already been entered in the Underlying Action against Portneuf for Portneuf's ERISA violations – this Court has no subject matter jurisdiction over Plaintiffs' Second Claim for Relief. *See Ellis v. All Steel Constr., Inc.*, 389 F.3d 1031, 1033-34 (10th Cir. 2004) ("If an alter-ego claim is asserted in

conjunction with the underlying federal cause of action, the latter may provide the basis for ancillary jurisdiction over the alter-ego claim, obviating *Peacock* concerns; it is only when an alter-ego claim is asserted in a separate judgment-enforcement proceeding that *Peacock* requires an independent basis for federal jurisdiction.").[5] As a result, Plaintiffs' Second Claim for Relief should be dismissed and Black Ridge's Motion to Dismiss should be granted in this respect.[6]

Plaintiffs' First Claim for Relief, however, is notably different. There, Plaintiffs allege that Black Ridge, as Portneuf's alter ego, was a signatory to the applicable agreements, yet failed to make continuing benefit contributions in violation of ERISA since June 22, 2012 – the date Black Ridge's predecessor in interest, Hilltop, was incorporated. *See* First Am. Compl., ¶¶ 18 &

---

[5] The Tenth Circuit in *Ellis* summarized the issue:

> No separate federal jurisdictional basis is needed when ERISA liability is asserted *directly* against a second entity based upon that second entity's direct role in the ERISA violation. This principle applies regardless of whether ERISA liability is asserted upon the basis of an alter-ego or veil-piercing theory. On the other hand, if ERISA liability is asserted derivatively against a second entity that did not directly participate in the ERISA violation – as for example, where successor liability is asserted – then a separate basis for federal jurisdiction must be established. In short, the determinative factor is not whether ERISA liability is asserted against the second company based upon an alter-ego or veil-piercing theory; rather, the determinative factor is whether ERISA liability is asserted against the second company directly based on the actions of the second company or whether liability is asserted only derivatively or vicariously against the second entity based solely upon the relationship between the second entity and the initial ERISA employer.

*Ellis*, 389 F.3d at 1035 (emphasis in original).

[6] Plaintiffs point out that the Trustee in the related Harris bankruptcy case "filed an adversarial Complaint [in the United States Bankruptcy Court for the District of Idaho] against Black Ridge, alleging fraudulent transfer of funds totaling $57,562.36 on September 4, 2014." Resp. to Mot. to Dismiss, p. 2, n.1 (Docket No. 29). However, asserting such a claim under the bankruptcy rules in the U.S. Bankruptcy Court does not overcome *Peacock's* mandate with respect to subject matter jurisdiction in this Court. Separately, the Court notes that the adversarial action against Black Ridge (14-08051-JDP) is currently set for trial on May 7, 2015.

**REPORT AND RECOMMENDATION - 12**

20-21 (Docket No. 26) ("Black Ridge has never made contribution payments for fringe benefits to any of the Plaintiffs, for any of its employees. . . . . Defendant Black Ridge is the alter ego of Portneuf Electric, and thus is . . . [a] signatory to collective bargaining agreements . . . . Black Ridge employed electricians but failed to make fringe benefit contributions to the Plaintiff benefit and pension funds in violation of the Labor Agreements, Trust Agreements, and ERISA § 515, 29 U.S.C. § 1145 for any of the electricians employed by it since June 22, 2012."). "A non-signatory company may . . . be liable if the non-signatory is the 'alter ego' of the signing company, if the two entities are a 'single employer,' or if 'the interests of the non-signatory and signatory parties are materially inseparable.'" *Trustees of Screen Actors Guild-Producers Pension and Health Plans v. NYCA, Inc.*, 572 F.3d 771, 776 (9th Cir. 2009) (citations omitted). "These theories . . . attempt to determine whether the two entities are, in reality, one and the same. If the non-signatory company is really the same as the signatory company, then it is fair to say that the purported non-signatory is actually a signatory, and therefore an 'employer who is obligated to make contributions' within the meaning of [29 U.S.C.] § 1145." *Id.* at 777.

  Unlike the allegations in Plaintiffs' original Complaint, their First Amended Complaint avers unique conduct on the part of Black Ridge as a means of invoking liability under ERISA – conduct that is separate and apart from actions giving rise to the judgment (which specifically relates to Portneuf's conduct alone) in the Underlying Action. To be sure, nothing in the record now before the Court suggests that the judgment in the Underlying Action included payment obligations under ERISA as of June 22, 2012 or beyond. To the contrary, the Underlying Action was filed more than three months before (on March 12, 2012), and neither Hilltop nor Black Ridge were named as parties. That lawsuit dealt with Portneuf, not Black Ridge. *See, e.g.*, Resp.

to Mot. to Dismiss, p. 2 (Docket No. 29) ("*Portneuf* failed to make the required contributions and Judgment was entered against *Portneuf* . . .") (emphasis added). Accordingly, Plaintiffs' First Amended Complaint, through its First Cause of Action, contains allegations which, taken as true, state a claim for relief. *See, e.g.*, Resp. to Mot. to Dismiss, p. 3 (Docket No. 29) ("Black Ridge is required to make contributions, and it hasn't. This failure establishes jurisdiction under ERISA and LMRA. . . . . This cause of action arises solely under federal law and the Court has subject matter jurisdiction to hear this dispute as a federal question.").[7] The ultimate strength of the claim will be determined as the case goes forward, but for now, notwithstanding the holding in *Peacock*, that claim may proceed. Black Ridge's Motion to Dismiss should be denied in this respect.

### III.  **<u>RECOMMENDATION</u>**

For the foregoing reasons, IT IS HEREBY RECOMMENDED that Black Ridge's Motion to Dismiss (Docket No. 28) be GRANTED, in part, and DENIED, in part, as follows:

1. Plaintiffs' Second Claim for Relief be dismissed. In this respect, Black Ridge's Motion to Dismiss should be GRANTED; and

2. Plaintiffs' First Claim for Relief not be dismissed. In this respect, Black Ridge's Motion to Dismiss should be DENIED.

---

[7] Plaintiffs go on to argue that "[o]nce such a question, clearly within the Court's subject matter jurisdiction is raised, supplemental jurisdiction is available to support a claim to enforce the *prior* judgment against Black Ridge, as well." Resp. to Mot. to Dismiss, p. 4 (Docket No. 29) (emphasis added). However, Plaintiffs' reliance on *Ellis* in that regard misses the point – to the extent it is offered to argue that this Court can exercise supplemental jurisdiction over the Second Claim for Relief given its apparent jurisdiction over the First Claim for Relief. *See id*. *Ellis* allows for alter ego claims to be asserted alongside, at the same time as, an understood federal cause of action. *See supra*. It does not permit a later-in-time alter ego claim in federal court to enforce an earlier judgment.

Pursuant to District of Idaho Local Civil Rule 72.1(b)(2), a party objecting to a Magistrate Judge's recommended disposition "must serve and file specific, written objections, not to exceed twenty pages . . . within fourteen (14) days . . ., unless the magistrate or district judge sets a different time period." Additionally, the other party "may serve and file a response, not to exceed ten pages, to another party's objections within fourteen (14) days after being served with a copy thereof."

DATED: **January 21, 2015**

_/s/ Ronald E. Bush_
Honorable Ronald E. Bush
U. S. Magistrate Judge